EMBRY & FISHER, plaintiffs in error, *vs.* JULIUS J. CLAPP defendant in error.

Under the law, as it now stands in this State, an insolvent debtor may make an assignment of his property in trust, *bona fide*, for the benefit of one or more creditors, to the exclusion of others; *Provided*, no trust or benefit is reserved to the assignor, or any person for him.

Assignment. Motion for new trial. Decided by Judge WORRILL. Muscogee Superior Court. May Term, 1868.

Embry & Fisher, in their pending action against Herbert W. Blair, sued out garnishment against Julius J. Clapp. Clapp answered that he owed Blair nothing, and had none of his effects. Embry & Fisher traversed said answer, and there was a trial of that issue. The evidence on the trial was as follows:

FRED. A. ROBINSON, sworn on the part of plaintiffs, testified he knew Herbert W. Blair, formerly Blair & Gennett. Blair had a stock of goods worth some eight to ten thousand dollars, in same store with witness, each occupying half the store. Blair made an assignment early in 1867; first heard of it from outside parties; then asked Blair, and Blair told him he had made an assignment. Swasey, one of the parties for whose benefit the assignment was made, had been in Columbus some two months before the assignment was made; made his headquarters at Blair's store; understood from Blair that Swasey was to send him goods to sell, to keep him employed. Blair expected goods to be sent soon after the assignment was made. A small lot was sent not long after, worth about $70 00; they were kept separate from the goods assigned. Clapp took possession soon after the assignment was made; can't say whether it was as much as a week. Clapp arranged for the rent of the store, and hired a Mr. Etheridge to take charge of the goods. Blair remained and sold goods as clerk; remained as clerk until the goods were taken from his store, on the first of October last; most of the goods were sold by that time. After Etheredge left, the goods were placed in charge of witness; the proceeds of the sale were turned over

by witness to Clapp. Clapp did not himself take actual possession, only by his agents and clerks; he remained at his own place of business; think Etheridge was employed soon after the assignment was made; can't tell if it was as much as a week after.

GEO. W. MARTIN, sworn by plaintiffs, testified he, as sheriff, had execution against Blair; went to levy upon the goods; found them in auction house of McNeil & Co. Blair was there and was selling some goods, and the auctioneer sold some. Blair told witness he must see Clapp about the levy; saw Clapp, and he said he would see plaintiffs' attorneys and arrange it. Only a remnant of goods left; not more than fifteen hundred dollars worth.

Plaintiffs then introduced two executions against Herbert W. Blair, one in favor of Embry & Fisher, for fifteen hundred and twenty-one dollars and two cents, principal, and one in favor of Richardson, Northman & Co., for thirty-one hundred and fifty-three 93-100 dollars, principal, both founded on debts existing at the date of the assignment, and two notes, amounting to some eight hundred dollars, on the said Blair, for debts existing at the date of the assignment. Plaintiffs also introduced the deed of assignment, of which the following is a copy:

STATE OF GEORGIA—MUSCOGEE COUNTY.

THIS INDENTURE, made this the 21st day of January, 1867, by and between Herbert W. Blair, of the first part, and John Swasey & Co., Hubbell Swasey & Co., of the second part, and Julius J. Clapp, trustee, of the third part: Witnesseth that for and in consideration of the sum of five hundred dollars in hand paid, the receipt whereof is hereby acknowledged, and the covenants hereinafter expressed; the said Herbert W. Blair hereby gives, grants, assigns, and turns over unto the said Julius J. Clapp and his assignees, all his merchandise and stock in trade, and all sums of money due, or coming to him on mortgage, bonds, notes, bills of exchange, or book account, or other matter whatever, to have and to hold to the said Julius J. Clapp upon trust, to sell and dispose of the goods, wares and merchandise at public or private sale, at said trustee's discretion, and to collect all the money aforesaid, and to pay the same over to John Swasey & Co., one note of twenty-nine hundred and ninety-nine 65-100 dollars, with interest from June 25th, 1866; one of fifteen hundred and nine 26-100 dollars, with interest due March 1st, 1866, with a credit of five hundred dollars,

Embry & Fisher *vs.* Clapp.

December 7th, 1866; and one of five hundred dollars, December 22d, 1866; and one note of twenty-nine hundred and eighty dollars and eighty cents, due November 26th, 1866, payable to Hubbell Swasey & Co. And it is hereby agreed, that the receipts of the said Julius J. Clapp for any of the assigned property, shall be an effectual discharge to the ——— when the same shall be given, and the said Julius J. Clapp is duly authorized to pay all necessary expenses and counsel fees for the proper protection and disposition of the aforesaid goods and credits.

In testimony whereof, we have hereto set our hand and affixed our seal, the 21st day of January, 1867.

H. W. BLAIR,        [L. s.]
JULIUS J. CLAPP,    [L. s.]
JOHN SWASEY,        [L. s.]
HUBBELL SWASEY,     [L. s.]

Plaintiff then closed his case.

Defendant then introduced HERBERT W. BLAIR, who testified that he made the assignment for the benefit of the parties mentioned in the deed, because he owed them more than any other persons, and because they had been good friends of his; bought goods from them, and frequently had them to pay bills for him for goods bought of others; owed about $15,000 00 at the time he made the assignment. Embry & Fisher and Richardson, Northman & Co., by their attorneys, Peabody & Brannon, were endeavoring to get him to mortgage his stock to them to secure their debts; he refused to do so; was employed by Clapp as clerk; made no contract as to what he was to get, and has not received any salary; an inventory of goods assigned was taken at the time; it amounted to $8,160 00, at cost prices; nearly about $1,500 00 worth of goods remained on hand; the rest had been carried to an auction house to be closed out at auction. Clapp had realized about $3,000 00, over and above expenses, from the assets assigned.

### Cross-Examined.

Swasey promised to send him goods to sell on commission, so as to keep him employed; they were to be sent soon after the assignment was made; expected them soon after; a small lot was sent; only one lot, worth about $70 00; they were kept separate from the goods assigned.

## *Re-Examined.*

After the assignment was made, Swasey promised to send the goods to be sold on commission; said he would send them as soon as this was fixed up.

Defendant then closed.

JOHN PEABODY, sworn for plaintiffs, testified that he, as attorney for plaintiffs and Richardson, Northman & Co., tried to secure their debts on Blair; tried to get him to give them a mortgage on his stock; that he refused, saying he had bought his dry goods from them, and groceries from other parties, and thought it would not be right to give them a mortgage on the groceries which were not paid for. Witness consented to take a mortgage on dry goods, and Blair promised to give it. He was to make out an inventory and then execute the mortgage; did not see him again for several days; heard of an assignment being made; called on Blair, and he said he had made one some ten days or two weeks; after the assignment was made, had a conversation with Clapp, and advised him as a friend to put some person other than Blair in possession; Clapp said he did not suppose he had to take actual possession; he then employed Etheridge as clerk.

Plaintiff then closed.

Defendant then introduced an inventory of the stock of goods, amounting to $8,160 00.

The Court charged the jury that an insolvent debtor might, under the laws of Georgia, prefer one creditor, by a deed of assignment, in trust for the benefit of some to the exclusion of other creditors. The jury found against the plaintiff. Thereupon his attorneys moved for a new trial, upon the grounds that the Court erred in said charge, and that said verdict was contrary to the law and the evidence. The new trial was refused, and this is assigned as error.

PEABODY & BRANNON, for plaintiffs in error, cited the Act of 24th February, 1866. Code, secs. 1942, 1943, 1954, 1955. 3d *Kelly*, *Ga. R.*, 158. 9th Bacon, Abr., 245. 11th Wendell R., 187. 2 John. Ch. R., 576. Burrell on Assign., 124 and 125.

RAMSEY & RAMSEY, (represented by JAMES RUSSELL, for defendant in error, handed no brief to the Reporter.

WARNER, J.

There was a motion made in the Court below for a new trial, upon two grounds: First, that the Court erred in charging the jury, that an insolvent debtor might, under the laws of this State, prefer one creditor, by a deed of assignment in trust, for the benefit of some to the exclusion of others. Second, because the verdict was contrary to law and the evidence. The Court overruled the motion for a new trial, which is now assigned for error here.

Was the charge of the Court right? How stood the old law upon the question of assignments by insolvent debtors, prior to the Act of 1865-6, now incorporated in the new Code? By the 1954th section of the old Code, an assignment by an insolvent debtor of his property, in *trust* for the benefit of any one or more of his creditors, to the exclusion of any other creditor, in equal participation of such property, was declared to be *void*. By the 1942d section of the new Code, *only* such assignments of property by an insolvent debtor are declared *void, where any trust or benefit is reserved to the assignor, or any person for him.* Why was an assignment made by an insolvent debtor of his property to one creditor, to the exclusion of others, void? Because the *old law* declared *it should be so.* Why is *not* such an assignment void *now?* Because, the law, as it now stands, *does not declare* that it shall be so. Construing the 1943d section of the new Code, and the 1942d section, together, as being, *in pari materia*, the *intention* of the Legislature, we think, is quite plain, that an insolvent debtor may make an assignment of his property in trust, for the benefit of one or more of his creditors, to the exclusion of others, so that it is done *bona fide*, and no *trust* or *benefit* be reserved to the assignor, or any person for him. There was no error in the charge of the Court upon this point in the case.

The jury having found the assignment to have been *bona*

*fide* under the evidence submitted on the trial, and the Court below being satisfied with the verdict, we will not disturb it by ordering a new trial.

Let the judgment of the Court below be affirmed.